IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IVOREE TINSLEY,

    Petitioner,

v.

C. CARTER,

    Respondent.

Civil Action No.:  JRR-24-970

**MEMORANDUM OPINION**

Petitioner Ivoree Tinsley filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the Federal Bureau of Prisons' ("BOP") practice of refraining from applying earned time-credits toward his supervised release or release to pre-release custody based on his Prisoner Assessment Tool and Targeting Estimated Risk and Needs ("PATTERN") score under the First Step ACT ("FSA") at 18 U.S.C. § 3632. ECF 1. In response, Respondent, former Warden Carter, has filed a motion to dismiss or, in the alternative, for summary judgment. ECF 5. The motion is opposed by Mr. Tinsley (ECF 7); and Warden Carter replied. ECF 10. The pending matters have been fully briefed and there is no need for a hearing. For the following reasons, Respondent's motion shall be granted, and the petition denied.

**I.    BACKGROUND**

Mr. Tinsley is a federal inmate who is currently confined in the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). He is serving a sentence of 70 months imposed by the United States District Court for the Northern District of Ohio for being a felon in possession of a firearm and ammunition, and possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 922(g)(1) and 924(a)(2) and 21 U.S.C. 841(a)(1) and

(B)(1)(C). ECF 5-1 at 6. According to Mr. Tinsley, he is eligible to earn 10 days of time-credit for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. ECF 1 at 2. He states that he is eligible to earn 365 days toward his early release. *Id*. at 4.

Mr. Tinsley asserts: (1) he has been denied a meaningful opportunity to reduce his classification during his incarceration (ECF 1 at 4); (2) inmates with medium or high risk assessment levels are permitted to petition the Warden to redeem their earned credits (*id*.); and (3) the FSA does not prevent medium or high security prisoners form receiving FSA credits (*id*. at 6). Mr. Tinsley explains that he is eligible to earn FSA time credits under the applicable statute, but the BOP has prevented the credits from being applied to his sentence and, in doing so, the BOP is ignoring the stated purpose of the FSA. *Id*. at 5. He also asserts that the BOP is not entitled to deference in its interpretation of the FSA. ECF 7.

Respondent provides an overview of the statutory and policy framework around the FSA, which was passed into law on December 21, 2018, amending 18 U.S.C. §§ 3621, 3624. ECF 5 at 2-6. The FSA increases the maximum allowable good time credits from 47 to 54 days per year. *Id*. at 2. Respondent does not dispute Mr. Tinsley's assertion that inmates are eligible to earn up to 10 days of credit for every 30 days of successfully completing programming that qualifies as recidivism reduction programming, but denies Mr. Tinsley's assertions that eligibility means application of the credits toward release. *Id*.

Under the FSA, the Attorney General is required to:

(1) conduct a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this subchapter;

(2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633;

2

(3) conduct ongoing research and data analysis on—

(A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;
(B) the most effective and efficient uses of such programs;
(C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and
(D) products purchased by Federal agencies that are manufactured overseas and could be manufactured by prisoners participating in a prison work program without reducing job opportunities for other workers in the United States;

(4) on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which review shall include—

(A) any subsequent changes to the risk and needs assessment system made after the date of enactment of this subchapter;
(B) the recommendations developed under paragraph (2), using the research conducted under paragraph (3);
(C) an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;
(D) statistical validation of any tools that the risk and needs assessment system uses; and
(E) an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates;

(5) make any revisions or updates to the risk and needs assessment system that the Attorney General determines appropriate pursuant to the review under paragraph (4), including updates to ensure that any disparities identified in paragraph (4)(E) are reduced to the greatest extent possible;

18 U.S.C. § 3631(b)(1)–(5).

Pursuant to those obligations, then-Attorney General William Barr developed the PATTERN assessment tool at issue in this case. The PATTERN tool was developed in consultation with the Director of the BOP, the Director of the Administrative Office of the United States Courts, the Director of the Office of Probation and Pretrial Services, the Director of the National Institute

3

of Justice, the Director of the National Institute of Corrections, and the Independent Review Committee. U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System* (2019). According to Respondent, PATTERN uses both static and dynamic factors associated with a prisoner's risk of recidivism; it is reviewed and validated annually as required by 18 U.S.C. § 3631(b)(4). ECF 5 at 3.

There are 15 variables used in the PATTERN tool to create a score for general recidivism, defined as a return to BOP or a re-arrest within three years of release, and one for violent recidivism, defined as a re-arrest for a suspected act of violence within three years of release from custody. *See* U.S. Dep't of Justice, *2020 Review and Revalidation of The First Step Act Risk Assessment Tool 2* (2021). The 15 variables are: (1) age at the time of assessment; (2) infraction convictions within the last 120 months; (3) infraction convictions for serious and violent acts during current incarceration; (4) whether the prisoner being assessed is infraction free; (5) whether the prisoner is free of any violent or serious infractions; (6) completion of programming; (7) programming for technical and vocational training; (8) drug treatment while incarcerated; (9) noncompliance with financial responsibility; (10) whether the instant offense is violent; (11) whether the prisoner is a sex offender; (12) criminal history (13) history of violence; (14) history of escapes; and (15) education score. *Id*. at 12–13. Respondent maintains that these factors are a combination of static and dynamic factors.[1] ECF 5 at 3. Several of the factors are dynamic, including work programming, drug treatment while incarcerated, program completions, and financial responsibility. "Nearly all effective [risk and needs assessment] tools incorporate both

---

[1] "Static factors are characteristics of inmates that are historical and therefore unchangeable . . . . By contrast, dynamic factors are variables that may change over time and may reflect more recent inmate behavior . . . ." U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System (2019)*, at 26.

static and dynamic factors." *Id*. (citing U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System* (2019) at 26).

Respondent does not dispute that Mr. Tinsley is eligible for earned time-credit under the FSA, nor does Respondent dispute that Mr. Tinsley's credits have not been applied toward his supervised release. ECF 5-1 at 9; ECF 5-1, ¶¶ 9, 11. Respondent explains that Mr. Tinsley was deemed eligible to earn FSA credits on May 7, 2024, and he has accrued a total of 616 programming days as of May 7, 2024, which translates to 200 days of time credits toward release and zero toward placement in a halfway house or home confinement. *Id*. at 12. Mr. Tinsley's recidivism risk level was assessed under PATTERN as being in the high range when he was reassessed on May 18, 2023, November 14, 2023, and January 11, 2024. *Id*. at 13, 15; ¶ 7.

## II.   STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts*.; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint [or petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

5

Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint [or petition] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint [or petition] will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### III.   DISCUSSION

To be entitled to the issuance of a writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

The Attorney General, acting through the BOP, has responsibility for administering a federal inmate's sentence. 18 U.S.C. § 3621; *United States v. Wilson*, 503 U.S. 329, 335 (1992). This includes determining where an inmate serves his sentence as well as time credit. 18 U.S.C. § 3621(b); *Wilson*, 503 U.S. at 335. While the Attorney General and, by designation, the BOP are charged with the responsibility of calculating earned time credits for federal prisoners, a prisoner may not be detained in violation of the law. As noted, Mr. Tinsley challenges the current PATTERN scoring tool as applied to him and argues the BOP is not entitled to deference following *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

Prior to *Loper Bright*, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate the statute by regulation" and the agency's interpretation was given deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense*

6

*Council, Inc.*, 467 U.S. 837, 843–44 (1984). The *Chevron* Court noted that it had "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id*. at 844. Under *Chevron*, where a statute was determined to be ambiguous, the Court's role was to examine whether the administrative agency's implementation of the statute through regulations was reasonable. *Id*. at 845.

*Loper Bright* changed this Court's role in reviewing an administrative agency's implementation of a statute. The BOP is such an agency. Under *Loper Bright*, courts need not, and under the Administrative Procedures Act ("APA") may not, defer to an agency's interpretation of the law simply because a statute is ambiguous. 144 S. Ct. at 2261–62. Pivotal in the analysis, and relevant here, is whether the challenge raised pertains to a regulation put in place by the administrative agency. *Id*. Further, there must be some ambiguity in the statute the agency administers that calls into question the validity of the regulation challenged. *Id*.

There is no ambiguity in the statute in question. The statute unambiguously mandates that only those inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release. 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii). The statute specifies that eligibility for application of credits is limited to an inmate who:

> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> * * *
>
> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—
> (I) has been determined under [PATTERN] to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

7

\* \* \*

> (D)(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under [PATTERN] to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), (D)(ii).

Mr. Tinsley has maintained a high recidivism risk score and is therefore ineligible to have the time credits applied to his sentence.

To the extent Mr. Tinsley takes issue with the requirement of achieving minimum or low recidivism risk scores prior to having his earned credits applied to his sentence, his challenge is to the statute, not the regulation. "[T]he Attorney General and the Bureau of Prisons are entrusted with sole authority to compute federal sentences." *Clinkenbeard v. King,* Civ. No. 23-3151 (JRT/LIB), 2024 WL 4355063, at \*4 (D. Minn. Sept. 30, 2024) (citing 28 C.F.R. § 0.96); *United States v. Moore*, 978 F.2d 1029, 1031 (8th Cir. 1992); *see also* 18 U.S.C. § 3632(a), (a)(6) (directing the Attorney General to develop a "risk and needs assessment system" that, among other things, will "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities"); 18 U.S.C. § 3632(d)(4)(A)(ii) (giving further discretion to the Bureau of Prisons to dole out additional time credits to prisoners it deems are at lower risks of recidivating); *Mero v. Yates*, Civ. No. 2:22-72, 2022 WL 17653228, at \*5 (E.D. Ark. Sept. 27, 2022) ("The earned time credit program is new and multifaceted, and the authority to implement the program and calculate an inmate's time credits is delegated to the BOP, not the federal courts.").

The BOP's use of the PATTERN tool to restrict application of FSA credits to prisoners with minimum or low risk recidivism scores does not amount to an agency's "interpretation" of a statute. To the contrary, the BOP has done what Congress commanded it do: create a method to determine

whether a prisoner is likely to recidivate and withhold FSA credits until the likelihood of recidivism is diminished to a minimum or low risk.

Even though Mr. Tinsley carries a high PATTERN score, he is still eligible to receive earned time credits under 18 U.S.C. § 3632(d) because his conviction is not a disqualifying offense. *See* 18 U.S.C. § 3632(d)(4)(D). But due to his high PATTERN score, he is not entitled to have those earned time credits applied to his sentence. 18 U.S.C. § 3624(g)(1)(B) (eligible prisoners have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment."). As such, Mr. Tinsley is not entitled to habeas relief.

### IV.   CONCLUSION

For the reasons noted, Respondent's Motion will be granted, the Petition will be dismissed. A separate Order follows.

October 2, 2025

/S/
_____
Julie R. Rubin
United States District Judge